**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors, | ) | |
| | ) | |
| IS BBFP LLC, and | ) | |
| IS 245 North 15th LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 23-50337(MFW) |
| | ) | |
| v. | ) | |
| | ) | |
| CENTER CITY HEALTHCARE, LLC | ) | |
| | ) | Re: Adv. D.I. 7, 11, 12, |
| Defendant. | ) | 20, 21, 23, 24 |

## MEMORANDUM OPINION

Before the Court is the Motion of Center City Healthcare,
LLC (the "Defendant") to partially dismiss the Amended
Complaint[1] filed by IS BBFP LLC and IS 245 North 15th LLC (the
"Plaintiffs").  In the Amended Complaint, the Plaintiffs seek
declaratory relief, an injunction, and damages for breach of
contract and a nuisance caused by the Defendant.  The parties
have fully briefed the Motion and presented oral argument to the
Court.  After carefully considering the arguments of the parties,
and for the reasons stated below, the Court will deny the Motion,

---

[1]    Adv. D.I. 7.  References to the docket in the instant
adversary proceeding are to "Adv. D.I. #" and references to the
docket in the bankruptcy case are to "D.I. #."

except to the extent the Plaintiffs agreed.[2]

I.   BACKGROUND[3]

On June 30, 2019, and July 1, 2019, the Defendant and some

of its affiliates (collectively the "Debtors") filed petitions

under chapter 11 of the Bankruptcy Code.  Prior to the filing

date, the Debtors operated two hospitals in the Philadelphia area

— St. Christopher's Hospital and Hahnemann University Hospital

("HUH").[4]

HUH's main campus was located on the block bounded by Broad,

---

[2]   In their Response to the Motion, the Plaintiffs agreed to
dismiss the claims in paragraphs 128(g) and 130(h) of the Amended
Complaint.  Adv. D.I. 21 at p. 2, n.2.

[3]   The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Instead, the facts recited are those well-
pled allegations of the Complaint, which must be accepted as true
for the purposes of this Motion to Dismiss.  Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009).  Pursuant to Fed. R. Evid. 210, the
Court also takes judicial notice of certain background facts
which are not in dispute from the pleadings filed in the
bankruptcy case.  See S. Cross Overseas Agencies, Inc. v. Wah
Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("To
resolve a 12(b)(6) motion, a court may properly look at public
records, including judicial proceedings, in addition to the
allegations in the complaint.").  Cf. In re Aughenbaugh, 125 F.2d
887, 889 (3d Cir. 1942) (holding, as a matter of due process,
that the trustee could not rely on pleadings filed in the main
bankruptcy case that were not identified and offered into
evidence in a contested matter because the other party had no
opportunity to refute them).

[4]   Declaration of Allen Wilen, D.I. 2, ¶¶ 9-10, 13.

15th, Race and Vine Streets.[5]  In a 2018 transaction, this real estate was sold to holding companies in six newly designated parcels, while the HUH operating entity was sold to the Defendant.  HUH was closed during the bankruptcy case.[6]

The real estate companies were not included in the bankruptcy filing, and post-petition, independent of the bankruptcy cases, the Plaintiffs acquired two of the parcels in the block (Parcels B and C, containing the New College, Bobst, and Feinstein Buildings).  The remaining parcels (Parcels A, D, E, and F, containing the North and South Towers, the SHSH Building, and parking lots and access ramps) were transferred to the Defendant as part of a global settlement agreement (the "MOU").[7]

## II.  PROCEDURAL BACKGROUND

The Plaintiffs filed the Amended Complaint on May 16, 2023.  The Defendant filed its Motion to Dismiss on June 1, 2023.  The Plaintiffs filed their Response on June 29, 2023.  The Defendant

---

[5]    Adv. D.I. 7, ¶ 10.

[6]    Declaration of Allen Wilen, D.I. 4200, ¶ 19.

[7]    The Plaintiffs objected to the proposed global settlement agreement, concerned that their rights under the EUU and REA would be affected.  D.I. 4184.  As a result of the objection, language was added to the order approving the MOU which reserved both the Plaintiffs' rights and the Defendant's defenses.  D.I. 4216.

filed its Reply on July 21, 2023. The Court held oral argument
on the Motion on November 7, 2023.

In the Amended Complaint the Plaintiffs seek (1) declaratory
relief related to their rights to access and make repairs to
areas owned or controlled by the Defendant, (2) damages resulting
from the Defendant's alleged breach of contract, (3) damages
resulting from alleged nuisance conditions caused by the
Defendant's failure to maintain its property, and (4) injunctive
relief requiring the Defendant to maintain its property. The
claims are predicated on an Easement and Unity of Use Agreement
(the "EUU") and a Reciprocal Easement and Operating Agreement
(the "REA"), as well as statutory and common law relating to
nuisances.

The Defendant's Motion seeks dismissal of (1) the
Plaintiffs' claims for declaratory relief and damages arising
from an alleged express easement, (2) the nuisance claims, and
(3) the claim for injunctive relief.


III. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this
adversary proceeding.[8] This action is a core proceeding.[9] In
addition, the parties have consented to entry of a final order by

---

[8]    28 U.S.C. § 1334(b).

[9]    <u>Id.</u> at § 157(b).

the Court on the Motion to Dismiss.[10]

IV.   DISCUSSION

    A.   Standard of Review

        1.   Rule 12(b)(6)[11]

The Defendant bases its Motion to Dismiss on Rule 12(b)(6), which provides for dismissal for "failure to state a claim upon which relief can be granted."[12]  Under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13]  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as

---

[10]   _Wellness Int'l Network, Ltd. v. Sharif_, 575 U.S. 665, 686 (2015) (holding that the bankruptcy court may enter a final order without offending Article III so long as the parties consent). _See_ LBR 7012-1 (stating that failure to include a statement consenting or not consenting to entry of a final order shall be deemed as a waiver of a party's right to contest the authority of the court to enter final orders or judgments).  The Plaintiffs have expressly consented to entry of a final judgment.  Adv. D.I. 7, ¶ 9.  The Defendant has not objected to entry of a final order on their motion.  Adv. D.I. 11 & 12.  In addition, both parties have attached proposed orders to their filings, seeking entry of a final order by this Court.  Adv. D.I. 11 & 20.

[11]   The applicable Federal Rules of Civil Procedure are incorporated into the Federal Rules of Bankruptcy Procedure.  _See_ Fed. R. Bankr. P. 7012.  Therefore, citations herein are to the Federal Rules of Civil Procedure.

[12]   Fed. R. Civ. P. 12(b)(6).

[13]   _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007).

true, "to state a claim to relief that is plausible on its face."[14]  Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[15]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[16]  The court must draw all reasonable inferences in favor of the plaintiff,[17] and the movant "bears the burden to show that the plaintiff's claims are not plausible."[18]

In weighing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis.  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[19]  Second, the court must separate the factual and legal

---

[14]    Id. at 570.

[15]    Iqbal, 556 U.S. at 663-64 (citation omitted).

[16]    Twombly, 550 U.S. at 570.

[17]    See, e.g., Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018).

[18]    UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC), 610 B.R. 779, 783 (Bankr. D. Del. 2020).

[19]    Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675).

elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[20] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[21] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[22]

      2.   <u>Easements</u>

Most of the arguments relate to the parties' interpretation of their rights under the EUU and the REA.

The Defendant argues that (1) an easement may be interpreted in the same manner as any other contract where the language is clear and unambiguous,[23] (2) contracts generally may be interpreted as a matter of law,[24] and (3) therefore, its motion to dismiss is the proper framework for interpreting the easements

---

[20]    <u>Santiago</u>, 629 F.3d at 130.  <u>See also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 679).

[21]    <u>Santiago</u>, 629 F.3d at 130.

[22]    <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

[23]    <u>See</u> <u>Steen v. Pa. Tpk. Comm'n</u>, 3 A.3d 747, 751-752 (Pa. Commw. Ct. 2010); <u>Joiner v. Sw. Cent. Rural Elec. Co-op. Corp.</u>, 786 A.2d 349, 352 (Pa. Commw. Ct. 2001).

[24]    <u>Miller v. Poole</u>, 45 A.3d 1143, 1145 (Pa. Super. Ct. 2012).

at issue.[25]

The Plaintiffs agree that contract interpretation generally presents a question of law[26] but emphasize that where there are ambiguities in a document, the question is then one of fact requiring evidence of the intention of the parties and the surrounding circumstances.[27]  In the latter circumstance, the Plaintiffs contend that the Court cannot decide the issue at the motion to dismiss stage.

The Court agrees with the Plaintiffs that the interpretation of a contract does not necessarily present a question of law that is appropriate to decide on a motion to dismiss.  If the contract terms are ambiguous, then the Court cannot definitively conclude (at the motion to dismiss stage) that the claim should be dismissed.[28]  If the terms of the contract are unambiguous,

---

[25]   Mareik Inc. v. State Farm Fire & Cas. Co., 537 F. Supp. 3d 818, 822 (E.D. Pa. 2021) (granting motion to dismiss based on interpretation of an insurance contract); 4431, Inc. v. Cincinnati Ins. Cos., 504 F. Supp. 3d 368 (E.D. Pa. 2020) (same).

[26]   IKB Int'l S.A. v. Wilmington Tr. Co., 774 F. App'x 719, 724 (3d Cir. 2019).

[27]   Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 201 (3d Cir. 2001) ("If the contract as a whole is susceptible to more than one reading, the fact finder resolves the matter.") (internal quotes omitted).  See also Merrill v. Mfrs. Light & Heat Co., 185 A.2d 573, 576 (Pa. 1962) (stating that where disputed term of an agreement is ambiguous, court should then look to "attendant circumstances" to construe it).

[28]   IKB Int'l, 774 F. App'x at 724 ("'[A] motion to dismiss must be denied' when 'the contract provisions at issue are ambiguous'. . . . because 'ambiguous terms are interpreted by the jury,

however, then the Court should be able to determine its meaning
at the motion to dismiss stage.  If the contract unambiguously
demonstrates that a claim for breach has not been stated, then
dismissal may be appropriate.  On the other hand, if the terms of
the contract unambiguously support the claim alleged, then
dismissal is not appropriate.

A contract is ambiguous if it is reasonably susceptible to
different constructions and capable of being understood in more
than one sense.[29]  "A contract is not ambiguous if the court can
determine its meaning without any guide other than a knowledge of
the simple facts on which, from the nature of the language in
general, its meaning depends; and a contract is not rendered
ambiguous by the mere fact that the parties do not agree on the
proper construction."[30]

---

unambiguous ones by the court.'") (internal citations omitted).
See also Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (holding
that unambiguous contracts are interpreted by the court as a
matter of law, while ambiguous writings are interpreted by the
finder of fact).

[29]    Kripp, 849 A.2d at 1163; Com. State Highway & Bridge Auth.
v. E. J. Albrecht Co., 430 A.2d 328, 330 (Pa. Commw. Ct. 1981) (a
contract is ambiguous if "it is reasonably or fairly susceptible
of different constructions and is capable of being understood in
more senses than one and is obscure in meaning through
indefiniteness of expression or has a double meaning").  See also
Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011
(3d Cir. 1980) (to determine whether ambiguity exists in a
contract, the court may consider "the words of the contract, the
alternative meaning suggested by counsel, and the nature of the
objective evidence to be offered in support of that meaning").

[30]    Baney v. Eoute, 784 A.2d 132, 136 (Pa. Super. Ct. 2001).
See also Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982) ("In

The Plaintiffs contend, and the Defendant does not dispute, that the EUU and the REA must be construed together, as they were executed contemporaneously, and one makes reference to the other.[31]  The parties also agree that Pennsylvania law regarding easements and contract law applies as each party cites Pennsylvania case law in support of its position.[32]  Additionally the EUU contains a choice of law provision making Pennsylvania law explicitly applicable,[33] and the REA makes reference to Pennsylvania and Philadelphia law and ordinances as legal requirements of the contract.[34]

---

holding that an ambiguity is present in an agreement, a court must not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity.  Thus, the meaning of language cannot be distorted to establish the ambiguity.").

[31]   Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986) ("[I]t is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each contributing to the ascertainment of the true intent of the parties.").

[32]   See, e.g., Adv. D.I. 21 at pp. 14-15 of 36; Adv. D.I. 12 at pp. 17-18 of 36.

[33]   Adv. D.I. 7, Ex. 1 at Section 4.3. ("Governing Law. This Easement is created under and is to be governed, construed, and enforced in accordance with the laws of the Commonwealth of Pennsylvania.").

[34]   Adv. D.I. 7, Ex. 2 at Section 1(m) ("'Legal Requirements' means all laws, rules, orders, ordinances, codes, regulations and requirements, now or hereafter enacted or promulgated, of the United States of America, the Commonwealth of Pennsylvania, the City of Philadelphia and of any other sovereign or municipality now or hereafter having jurisdiction over the Entire Project or

Pennsylvania courts construe easements in the same manner as other contracts.[35]  They have found an easement ambiguous when important terms are left undefined or its scope is not specified.

> If the location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications. . . .  If, however, the language of a granting deed is ambiguous regarding these matters, then the intent of the parties as to the original purpose of a grant is a controlling factor in determining the extent of an easement.[36]

With these principles in mind, the Court addresses the arguments of the parties.

B.    Are the EUU and REA Unambiguous?

In the Amended Complaint, the Plaintiffs allege that

---

any portion thereof, and of any governmental or quasi-governmental agency thereof now or hereafter having such jurisdiction, and of any other lawful authority having such jurisdiction.").

[35]    "In effect, an easement is interpreted in the same manner as any other contract; if the language of the agreement is clear, our inquiry is ended; if it is ambiguous, then the trier of fact determines the intent of the parties."  Joiner v. Sw. Cent. Rural Elec. Co-op. Corp., 786 A.2d 349, 352 (Pa. Commw. Ct. 2001) (vacating lower court's decision because scope of easement was ambiguous).

[36]    PARC Holdings, Inc. v. Killian, 785 A.2d 106, 111 (Pa. Super. Ct. 2001) (internal citations omitted) (holding that trial court's consideration of extrinsic evidence in interpreting easement was appropriate because the easement was stated in general terms).  See also Amerikohl Mining Co. v. Peoples Nat. Gas Co., 860 A.2d 547, 550 (Pa. Super. Ct. 2004) (finding the term "a right to mine" in an easement agreement was ambiguous because it was not clear what method of mining was allowed - strip mining or surface mining); Lease v. Doll, 403 A.2d 558, 562 (Pa. 1979) (finding language in an easement ambiguous where it did not specify the use contemplated by the parties of a path along a river - pedestrian or vehicular traffic).

Section 1.1 of the EUU creates an express easement[37] in all

"common areas," which they contend encompasses the Bobst access

ramp, east sidewalk, and the lot D surface parking lot.  The

Plaintiffs also contend that they have the right to maintain

those areas under the maintenance provisions of the REA and as a

right inherent to having an easement.[38]  They rely on Section 1.1

of the EUU which provides:

> **Easement**. <u>Owners hereby establish and create, for the
> benefit of all six (6) Parcels, reciprocal easements
> that allow all six (6) Parcels to use and enjoy all
> common areas</u>, and use the Property as if it were
> comprised of one parcel for zoning purposes, as more
> specifically described in an Operation and Reciprocal
> Easement Agreement among the Owners, to be recorded
> immediately hereafter.[39]

The Defendant argues that the EUU and REA do not provide an

easement to the broad extent that the Plaintiffs allege.

Specifically, the Defendant asserts that the Plaintiffs' claims

of an express easement on the common areas and associated right

to access and maintain those areas or require the Defendant to

---

[37]  <u>See</u> Adv. D.I. 7, ¶¶ 18, 128.  The Plaintiffs also allege
that they have an implied easement or easement by prescription or
necessity under common law.  <u>Id.</u> at ¶ 128(e).  However, the
Defendant in the Motion to Dismiss does not ask for dismissal of
the implied easement claim.  <u>See</u> Adv. D.I. 35, Transcript of Oral
Argument, at pp. 28, 44-45.

[38]  <u>Cain v. Aspinwall-Delafield Co.</u>, 137 A. 610, 611 (Pa. 1927)
(holding that grantees of an easement right of way are entitled
to make reasonable repairs to the road covered by the easement
but only to the extent that making changes in the condition of
the right of way does not damage the servient tenant's property).

[39]  Adv. D.I. 7, Ex. 1 at Section 1.1 (emphasis added).

maintain those areas for its benefit must be dismissed.

The Defendant makes several arguments in support of its Motion to Dismiss: (1) The EUU is not an "agreement," (2) the EUU lacks express language conveying and granting any easement, (3) even if the EUU does create an easement, it was for zoning purposes only, (4) the EUU easement, if it exists, is limited to those created in the REA.

    1.   <u>Is the EUU Unambiguously Not an Agreement?</u>

First, the Defendant argues that the EUU was not an express agreement to create an easement because the title of the document itself (Easement and Unity of Use <u>Statement</u>) demonstrates that it is merely a statement and not an agreement.  The Defendant contends that this was purposeful and that the document was simply serving to reflect an understanding among the parties, rather than serving to bind the parties.

The Plaintiffs dispute this interpretation, arguing that the EUU is more than a mere statement but rather an enforceable contract containing words of agreement and supported by consideration.

The Court agrees with the Plaintiffs.  The EUU itself is clearly an agreement, as evidenced by the signatures of the parties' predecessors in interest and by the language in Section 2.1 stating that

> all four (4) Owners hereby <u>agree</u> and state that the
> Parcels shall be considered one contiguous parcel of

> land.  In connection therewith, Owners hereby <u>agree</u> and
> covenant that the Parcels shall be used in such a
> manner as if the six (6) parcels that comprise the
> Property were one zoning property.[40]

The Court cannot conclude that the EUU is unambiguously only an

unenforceable "statement."

       2.   <u>Does the EUU Unambiguously Not Grant an Easement?</u>

Second, the Defendant disputes the Plaintiffs' assertion

that Section 1.1 creates an easement.  The Defendant asserts that

the Plaintiffs rely on just seven words in the EUU to

"manufacture" an easement.  The Defendant argues that while

Section 1.1 has language purporting to create an Easement, that

language ("Owners hereby establish and create . . . reciprocal

easements")[41] is less direct and clear than the language in the

REA (whereby each owner "declares, and grants, conveys and sets

over unto"[42] the other owners each of the specific easements

listed therein).  The Defendant's counsel asserted at oral

argument that the Court should infer from the absence of the

"granting and conveying" language in the EUU, when it was used in

the REA, unambiguously evidences that the EUU did not grant and

convey any easements.[43]

The Court cannot agree with the Defendant's position that

---

[40]    Adv. D.I. 7, Ex. 1 at Section 2.1 (emphasis added).

[41]    <u>Id.</u> at Section 1.1.

[42]    Adv. D.I. 7, Ex. 2 at Section 2(a).

[43]    Adv. D.I. 35, pp. 17-18.

the EUU unambiguously does not grant an easement.  The seven
words cited by the Defendant are not "clearly insufficient" to
create an easement: they expressly state that the parties are
"establish[ing] and creat[ing]" an easement.[44]  Further, the EUU
contains the word easement numerous times[45] referring to itself
as "this easement" in several places.[46]  Finally, an entire
section of the EUU is devoted to how the parties may extinguish
the easement.[47]  All of that provides support for the Plaintiffs'
allegation that the EUU created an easement.  In addition, a
court may find an express easement even in the absence of
granting language and in the absence of the use of the word
easement.[48]  Consequently, the Court cannot conclude, as the
Defendant contends, that the EUU — which uses both — is
unambiguously <u>not</u> an easement.

---

[44]    Adv. D.I. 7, Ex. 1 at Section 1.1.

[45]    <u>Id.</u> at Section E (four uses of word easement); Section 1.1
(three uses); Section 3.1 (13 uses).

[46]    <u>See, e.g.</u>, <u>id.</u> at Section E ("This Easement is
simultaneously submitted to L&I in conjunction with a permit
application for the Property and this Easement must be recorded
against the Property and run with the land.").

[47]    <u>Id.</u> at Section 3.1 ("At any time hereafter, this Easement
may be extinguished by the written agreement of all Owners, such
executed agreement to be recorded.").

[48]    <u>See</u> <u>Kapp v. Norfolk S. Ry. Co.</u>, 350 F. Supp. 2d 597, 608
(M.D. Pa. 2004) (express easement found even in absence of
granting language or the word "easement" where the record
reflected an intent of the parties to create a means of ingress
and egress to a parcel).

### 3. Is the EUU Easement Unambiguously Limited to Zoning Purposes?

Third, the Defendant asserts that the express language of the EUU limits the purported grant of any easement to zoning purposes only.  This, the Defendant contends, shows that it was not intended to be an actual grant of a right to use the common areas.  The Defendant contends that Section 2.1 shows this limited purpose of the EUU: "For purposes of zoning, exclusively, all four (4) Owners hereby agree and state that the Parcels shall be considered one contiguous parcel of land."[49]  The Defendant suggests that this makes any alleged easements created by the EUU illusory.

The Plaintiffs acknowledge the language of Section 2.1, but they argue that it relates only to the unity of use (i.e., treatment of all the parcels as one) and does not limit the easement created in Section 1.1.  They argue that there is no language in Section 1.1 (which creates the easement) that limits that easement to zoning purposes.  Instead, they contend that Section 1.1 expressly states that only the use of the property (as one contiguous parcel) was to be limited to zoning purposes.[50]  Therefore, the Plaintiffs assert that the limitation of the unity of use to zoning purposes is not an unambiguous limitation on the grant of the easement.  The Plaintiffs argue

---

[49]   Adv. D.I. 7, Ex. 1 at Section 2.1.

[50]   Id. at Section 1.1.

16

that the separation of Section 1.1 (titled "Easement") from
Section 2.1 (titled "Unity of Use") supports their contention
that the purpose of the EUU was to accomplish two separate
things: create an easement and designate a unity of use.

The Court agrees with the Plaintiffs and rejects the
Defendant's argument that the EUU unambiguously restricts the
creation of the easement in common areas to zoning purposes only.
A reasonable interpretation of Section 2.1 is that it reflects
only the owners' agreement to consider the multiple parcels as
one exclusively for zoning purposes.  Further, the Court finds
that Section 1.1 does not unambiguously support the Defendant's
argument.  There is a comma placed between the clause "reciprocal
easements that allow all six (6) Parcels to use and enjoy all
common areas" and the following clause, "and use the Property as
if it were comprised of one parcel for zoning purposes."[51]  This
supports the Plaintiffs' argument that the language "for zoning
purposes" modifies only the use of the Property "as one parcel"
and not the grant of an easement in all common areas.[52]

---

[51]    Id.

[52]    "The grammatical construction of contracts generally
requires that a qualifying or modifying phrase be construed as
referring to its nearest antecedent."  New Castle Cnty., Del. v.
Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 174 F.3d 338, 348
(3d Cir. 1999) (holding that contract provision was ambiguous
because of grammatical arrangement of clauses).  See also 17A
Am.Jur.2d Contracts § 369 (1991) (instructing a court to give
"due force to the grammatical arrangement of clauses" because
grammatical construction of a contract "is often a reliable
signpost" in construing its language).

Thus, the Court concludes that a fair reading of the entire EUU does not support the Defendant's argument that the EUU unambiguously limits any easement it creates to zoning purposes.

Furthermore, even if the creation of the easement in the EUU was for zoning purposes only, it does not follow that an easement allowing access and use was not created. As the Plaintiffs' counsel explained at oral argument, Philadelphia zoning requirements include having adequate parking and areas for loading, as well as street access, for each parcel.[53] The zoning site map attached to the EUU explains in detail the way in which the total number of parking spaces of the combined parcels satisfies the zoning requirements for each parcel.[54] Therefore, it is reasonable to read the EUU as creating an easement in the parking lots and access ramps, even if it was for zoning purposes only.

4.   Is the EUU Easement Unambiguously Restricted to those in the REA?

Fourth, the Defendant argues that to the extent the EUU did create any easement, that easement was limited in scope and definition to the easements the REA created. The language upon which the Defendant relies is highlighted below.

> **Easement**. Owners hereby establish and create, for the benefit of all six (6) Parcels, reciprocal easements that allow all six (6) Parcels to use and enjoy all

---

[53]   See Adv. D.I. 35, pp. 54-56.

[54]   Adv. D.I. 7, Ex. 1 at p. 22 of 24.

18

common areas, and use the Property as if it were
comprised of one parcel for zoning purposes, <u>as more
specifically described in an Operation and Reciprocal
Easement Agreement</u> among the Owners, to be recorded
immediately hereafter.[55]

    a.   <u>Grammatical Ambiguity</u>

The Plaintiffs argue that it is not clear what provision the

clause "as more specifically described in an Operation and

Reciprocal Easement Agreement among the Owners" modifies in

Section 1.1 of the EUU.[56]  A comma separates that clause from the

rest of the sentence, making its function grammatically

ambiguous.  It could be read to modify only the preceding clause

("and use the Property as if it were comprised of one parcel for

zoning purposes") rather than the first clause in which the

easement on common areas is granted, as the Defendant urges.[57]

The Court agrees with the Plaintiffs that the comma makes

the clause ambiguous as it is reasonably susceptible to different

interpretations.

    b.   <u>Common areas is not a defined term</u>

The Plaintiffs contend that because "common areas" is not

defined in the EUU or in the REA, it must be given its common

usage and not be limited to the definitions in the REA.  They

---

[55]    Adv. D.I. 7, Ex. 1 at Section 1.1 (emphasis added).

[56]    Adv. D.I. 35, p. 57.

[57]    <u>New Castle Cnty.</u>, 174 F.3d at 348 (holding that provision in
an insurance contract was ambiguous because of grammatical
arrangement of clauses).

contend that "common areas" clearly encompass the walkways,

parking lots, and ramp to the parking areas on Parcels B, C, E,

and F.  In contrast, they note that the easements granted in the

REA are to "shared" areas that would not generally be considered

"common areas."[58]

The Defendant argues that the definitions of the easements

granted in the REA unambiguously show that the only "common

areas" on which an easement is granted are the Shared Loading

---

[58]   Adv. D.I. 7, Ex. 2 at Section 1 provides:
"Separate Facilities" shall mean those facilities that are
located upon one Lot and are intended pursuant to this Agreement
to provide the applicable services for the exclusive benefit of
one (1) other Lot, such as the Helipad or emergency power supply
or other Utility Facilities that serves only one Lot though
located on a different Lot.
"Shared Utility Facilities" shall mean any Utility
Facilities that are located on one Lot and serve multiple Lots
(including, if applicable, the Lot on which such Utility
Facilities are located).
"Shared Loading Dock" shall mean the underground loading
dock and related facilities (including trash and refuse
compactors) located primarily on the Feinstein/Bobst Lot,
together with the ramp providing short-term truck staging and
vehicular and pedestrian access to such facilities from Race
Street over and across the HUH Lot E, in the approximate
locations depicted on Exhibit C-1 and C-2 of the Site Plan, which
currently serve and provide off-street loading, shipping and
receiving facilities for the Buildings located on the New College
Lot, the North/South Tower Lot and the Feinstein/Bobst Lot.
"Shared Interior Accessways" shall mean the interior
doorways, hallways and passageways that currently provide
interior access, circulation and passage ways (including
emergency access and egress, to the extent required by applicable
Legal Requirements) between adjoining Buildings located on
adjacent Lots, substantially as the same are currently configured
and available to and utilized by the Permittees of such Buildings
on the Effective Date.
"Helipad" shall mean the helipad that is located on the roof
of the Building on the New College Lot, which exclusively serves
the hospital operated on the North/South Tower Lot.

Dock (located on two different Parcels) and the Shared Interior Accessways (located on specific Parcels which allow their use by owners of adjacent lots). The Defendant further argues that Section 3(c) in the REA,[59] which states that the easements created in Section 2 of the REA are not intended to be blanket easements, confirms the limited nature of the easements granted.

The Plaintiffs respond that there is no inconsistency between the REA language and the EUU's grant of access to common areas. They contend that because the EUU creates a separate easement, it is not relevant that the easements created under the REA were intended to be limited.

The Court concludes that the use of the term "common areas" in the EUU is not clear and unambiguous because it is reasonably susceptible to multiple interpretations. The Court cannot conclude, as the Defendant would have it, that the EUU's grant of an easement in common areas is unambiguously limited to the specific easements delineated in the REA, many of which are clearly not easements in common areas.

---

[59] "The easements created under Section 2 of this Agreement are not intended to be 'blanket easements' over the entire Lot on which the applicable Easement Facilities, Encroachments and Support Elements are located. The location and scope of the easements created under Section 2 are intended to be limited in all material respects to the location and function of the applicable Easement Facilities, Encroachments and Support Elements as of the Effective Date (subject to the right of the Providing Owners to relocate Easement Facilities and to make Alterations in accordance with this Agreement), together with reasonable access thereto." Id. at Section 3(c).

21

In addition, the EUU makes references to "other easements" in Section 4.5, stating that "this easement" should not be taken as altering or diminishing any other existing easements.  It is reasonable to infer, as the Plaintiffs do, that the "other" easements mentioned in section 4.5 are those created in the REA because there are no other easements mentioned in the EUU.  That would support the Plaintiffs' conclusion that the EUU and REA create different easements.

Because the Court concludes that the language of the EUU and REA plausibly supports the Plaintiffs' claims in the Amended Complaint that they have an easement in common areas that is broader than the easements granted in the REA, the Court cannot grant the Defendant's Motion to Dismiss the counts of the Amended Complaint premised on such an easement.  Additional evidence on the intent of the parties, including how they historically treated those agreements in practice, is necessary before the Court can determine which interpretation of the agreements is correct.[60]

C.  Nuisance Claim

As noted above, the Amended Complaint also asserts a nuisance claim.  At oral argument, the Plaintiffs argued that the

---

[60]    Zettlemoyer v. Transcon. Gas Pipeline Corp., 657 A.2d 920, 924 (Pa. 1995) ("our cases tell us that when the grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant").

Amended Complaint states a claim for both a public and private nuisance.  Under Pennsylvania law a party may properly allege both a public and a private nuisance claim.[61]

### 1.    Elements of a Private Nuisance Claim

To state a claim for a private nuisance, the Plaintiffs must plausibly allege that the Defendant's conduct was (1) intentional and unreasonable or unintentional but negligent, (2) the proximate cause of, (3) an invasion of or interference with the Plaintiffs' use and enjoyment of land, (4) which caused significant harm.[62]

### 2.    Elements of a Public Nuisance Claim

To state a claim for a public nuisance, the Plaintiffs must allege that (1) the Defendant's conduct, (2) was the proximate cause of, (3) an unreasonable interference with, (4) a right common to the general public, (5) the Plaintiffs have suffered a particular harm over and above that suffered by the general public, and (6) the harm caused was significant.[63]

---

[61]    Youst v. Keck's Food Serv., 94 A.3d 1057, 1071 (Pa. Super. Ct. 2014) ("A nuisance may be public, private, or both public and private."); Baptiste v. Bethlehem Landfill Co., 965 F.3d 214, 223 (3d Cir. 2020) (same).

[62]    Baptiste, 965 F.3d at 222-23 (describing elements of a nuisance claim generally) (citing Youst, 94 A.3d at 1072); Kembel v. Schlegel, 478 A.2d 11, 15 (Pa. Super. Ct. 1984).

[63]    Baptiste, 965 F.3d at 220-21.

Examples of public nuisances include excessive noise,[64]

excessive odors,[65] and dilapidated structures which pose a risk

to the public.[66]  Lack of maintenance of a public sidewalk which

creates a hazardous condition may also constitute a public

nuisance.[67]  However, as the Defendant notes, a mere annoyance is

not sufficient to establish the existence of a nuisance.[68]

---

[64]  See, e.g., Com. v. MacDonald, 347 A.2d 290 (Pa. 1975)
(listing numerous examples); Borough of McKees Rocks v. Allegheny
Cnty. Sanitary Auth., No. 2:21-CV-530-NR, 2022 WL 1443749 (W.D.
Pa. May 6, 2022) (holding that tunnel-boring project constituted
public nuisance due to excessive noise, vibrations, noxious odors
and dust).  See also Pennsylvania Safe Drinking Water Act, 35 Pa.
Cons. Stat. § 721.12 (2023) (any violation of the act constitutes
a public nuisance); Pennsylvania Air Pollution Control Act, 35
Pa. Cons. Stat. § 4013 (2023) (same).

[65]  Baptiste, 965 F.3d at 217.

[66]  Donley v. Boettcher, 255 N.W.2d 574 (Wis. 1977) (affirming
trial court's finding that dilapidated building, unfit for human
occupation, constituted a public nuisance under applicable
ordinance); Pucci v. Algiere, 261 A.2d 1 (R.I. 1970) (affirming
finding that dilapidated building which was structurally unsound
and target of vandalism constituted a public nuisance under
applicable ordinance and at common law).

[67]  McFarlane v. City of Niagara Falls, 160 N.E. 391 (N.Y. 1928)
(concluding that projection in sidewalk which caused pedestrian
to fall and injure herself was a public nuisance).

[68]  "The mere fact of annoyance from the conduct of a business
does not establish the existence of a nuisance, and hence,
standing alone, it will not be a sufficient basis for an
injunction against the particular use from which the alleged
annoyance arises.  One who lives in a city must bear with the
inconveniences growing out of his location there, just as he
enjoys the benefits flowing from it, even though the construction
and use of a building may to some extent affect the personal
comfort or preference of neighbors."  Burke v. Hollinger, 146 A.
115, 117-18 (Pa. 1929) (affirming lower court's ruling that
construction of an extension to a parking garage should not be
enjoined as a nuisance per se).

Pennsylvania's abatement statute (which authorizes cities to use summary abatement proceedings to eliminate public nuisances) states that a public nuisance can be based on any of the following conditions:

> (i) A menace, threat or hazard to the general health and safety of the community.
> (ii) A fire hazard.
> (iii) A building or structure that is unsafe for occupancy or use.
> (iv) Property that is so inadequately or insufficiently maintained that it diminishes or depreciates the enjoyment and use of other property in its immediate vicinity to the extent that it is harmful to the community in which the property is situated.[69]

To bring a private cause of action for a public nuisance, a private party must allege it suffered a significant, particular harm, in addition to that suffered by the public generally.[70]

### 3.    The Plaintiffs' Allegations

The Plaintiffs argue that they have stated a claim for damages and for an injunction relating to nuisance conditions

---

[69]    11 Pa. Cons. Stat. § 127A01 (2021).

[70]    Baptiste, 965 F.3d at 220 ("When a public nuisance interferes with an individual's personal rights, such as the right to use and enjoy 'private land,' the aggrieved person has a private cause of action to remedy the infringement of his personal rights."); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000) ("In order to recover damages in a private action for public nuisance, a plaintiff must have suffered a harm of greater magnitude and of a different kind than that which the general public suffered."); Pa. Soc. for Prevention of Cruelty to Animals v. Bravo Enter., Inc., 237 A.2d 342, 348 (Pa. 1968) ("[A] public nuisance may be enjoined at the behest of a private citizen or group of citizens, if . . . their property or civil rights . . . are specifically injured by the public nuisance over and above the injury suffered by the public generally.").

caused by the Defendant's conduct.  In Counts 3 and 4 of the
Amended Complaint, the Plaintiffs allege that the Defendant has
permitted the deterioration of the sidewalks and the Bobst access
ramp on parcel E and the surface lot on parcel D,[71] the
accumulation of graffiti on the SHSH building on Parcel E,[72] and
trespassers (including homeless persons) to access or reside on
its property.[73]  The Amended Complaint also alleges the
deterioration of a designated fire lane, making the conditions of
the property particularly unsafe, according to the Plaintiffs.[74]
The Plaintiffs contend that the Defendant has allowed the
nuisance conditions to persist despite the Defendant's obligation
to remedy those conditions under the REA and applicable law.[75]

The Plaintiffs argue that the Amended Complaint alleges
economic harm to their property, which is in close proximity to
the unsightly SHSH building, such as the reduction in the value
of their property and their inability to attract new tenants to
their building.[76]  The Plaintiffs also allege that they have

---

[71]    Adv. D.I. 7, ¶¶ 71-74.

[72]    Id. at ¶¶ 58-68.

[73]    Id. at ¶¶ 58, 60-62.

[74]    Id. at ¶ 74.

[75]    Id. at ¶¶ 60, 68.1, 68.2, 72, 73.

[76]    Id. at ¶¶ 55, 70, 98, 132.

incurred increased security costs due to the problem with trespassers.[77]

    4.   The Defendant's Arguments

       a.   Violation of Public Right

The Defendant first seeks to dismiss the public nuisance claim on the basis that the Plaintiffs have failed to allege a violation of a public right.  The Plaintiffs respond that conduct proscribed by ordinance may constitute a public nuisance (and, therefore, a violation of a public right).  They argue that the graffiti, unsafe sidewalks, and removal of fire-lane signage are such conduct.[78]

The Court agrees with the Plaintiffs that the Amended Complaint has alleged a violation of a public right.  The Plaintiffs have plausibly alleged a claim that the Defendant's failure to maintain the property caused harm to the public health and safety by creating a target of vandalism and an attractive nuisance for trespassers.

The Plaintiffs' allegations are not confined simply to the accumulation of graffiti on the SHSH building, which might be a mere annoyance.  Rather, the Plaintiffs paint a picture of a property being left derelict to the point that it has attracted

---

[77]    Id. at ¶ 132.

[78]    Baptiste, 965 F.3d at 223.  At oral argument, counsel for the Defendant represented that the fire signs had been removed only temporarily to permit painting to be done and that no hazardous fire condition remained as a result.

the homeless.  The Plaintiffs' allegations fit squarely within
the definition in the state abatement statute of a property
"inadequately or insufficiently maintained" to the point that it
"depreciates the enjoyment and use of [adjacent property]."[79]  In
addition to the state violations, the Plaintiffs allege that the
condition of the Defendant's property creates a public nuisance
under the Philadelphia Municipal Code which requires remediation
of graffiti and maintenance of one's property and states that
repeated failure to do so may constitute a public nuisance.[80]
Consequently, the Court concludes that the Plaintiffs have
alleged a violation of a public right.

> b.    Particular Harm to the Plaintiffs

The Defendant also argues that the Plaintiffs have failed to
allege that they suffered a particular harm over and above that
suffered by the general public.  The Defendant contends that
under the economic loss doctrine, the Plaintiffs' alleged
economic damages are not sufficient to state a private claim for
a public nuisance under Pennsylvania law.[81]  The economic loss

---

[79]    11 Pa. Cons. Stat. § 127A01(iv) (2021).  Cf. Wolf v.
Santiago, 230 A.3d 394 (Pa. Super. Ct. 2020) (affirming
appointment of conservator because of the dilapidated condition
of neighbor's house, piles of trash, and accumulation of
graffiti).

[80]    Adv. D.I. 7, ¶ 67.  See 9 Philadelphia Code § 4404.

[81]    See Duquesne Light Co. v. Pa. Am. Water Co., 850 A.2d 701
(Pa. Super. Ct. 2004) (affirming grant of summary judgment in
favor of defendant because the economic loss doctrine would
likely bar a private cause of action for public nuisance).

doctrine provides that "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss' - that is, loss that is neither physical injury nor damage to tangible property."[82]

The Plaintiffs respond that they have alleged damages beyond economic loss because the very safety of all the properties' occupants (including the Defendant's own personnel) is compromised.

Taking the totality of the facts alleged, the Court concludes that the Plaintiffs have alleged particular harm to themselves in addition to harm to the general public.  The Plaintiffs allege that they have incurred increased security costs because of the trespassers.[83]  They also allege that they have lost value in their property and have had trouble developing and marketing their building because they are situated adjacent to the dilapidated property.[84]

It is a reasonable inference from the allegations of the Amended Complaint that the physical safety of the Plaintiffs' agents, employees, and licensees was threatened by the regular

---

[82]   <u>Commonwealth v. Monsanto Co.</u>, 269 A.3d 623, 676-77 (Pa. Commw. Ct. 2021) (citation omitted) (denying demurrer as to the Commonwealth of Pennsylvania's public nuisance claim and finding that the economic loss doctrine would not clearly preclude the Commonwealth's recovery for harm to natural resources).

[83]   Adv. D.I. 7 at ¶¶ 58, 60, 62, 70, 84, 132.

[84]   <u>Id.</u> at ¶¶ 55, 62 70, 98, 132.

and ongoing presence of trespassers.  This is a particular, non-economic harm, suffered by the Plaintiffs to a greater extent than the harm suffered by the general public as a result of the public nuisance conditions.

Further, it is not clear to the Court that the economic loss doctrine applies to a claim for a public nuisance in Pennsylvania.[85]  To the extent the Plaintiffs' claim is premised on negligent acts of the Defendant, a claim for solely economic damages may be viable.[86]  In any event, the Court finds that the Plaintiffs' allegations of harm, including increased security costs, diminution in the value of their property, and the deprivation of adequate access by visitors to their building and to parking, as well as threats to physical safety, are sufficient particular harm to themselves that is different from the harm to the public.

c.    Significant Harm

The Defendant also argues that the Plaintiffs have failed to

---

[85]    See, e.g., Dittman v. UPMC, 196 A.3d 1036, 1054 (Pa. 2018) (limiting the applicability of the economic loss doctrine where a tort claim was premised on a breach of a common law duty of reasonable care rather than a contractual duty).  See also Monsanto, 269 A.3d at 678 (distinguishing Duquesne Light, 850 A.2d 701, because that case did not involve state actors).

[86]    See, e.g., Dittman, 196 A.3d at 1054 ("[W]e hold that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages.").

allege significant harm.  This is a requisite element for both public and private nuisance claims.

The Plaintiffs allege that the harm suffered by them has been significant and sustained.[87]  In the Amended Complaint, they allege that the nuisance conditions have persisted for a number of years and were significant enough for the City of Philadelphia to attempt to abate the nuisance by removing some of the graffiti.[88]

The standard for determining whether an alleged invasion of property rights is significant is the "standard of normal persons or property in the particular locality.  If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant."[89]  The Court concludes that the allegations of the Amended Complaint meet that standard.  The

---

[87]    See Restatement (Second) of Torts § 821F (1979) (one factor in assessing significance of harm is the duration of the nuisance).

[88]    Adv. D.I. 7, ¶ 67.  Notwithstanding that abatement, the Plaintiffs allege that the Defendant failed to remediate the remaining graffiti (or additional graffiti) until after the filing of the Original Complaint.  Id. at ¶¶ 68, 68.1.

[89]    Umphred v. VP Auto Sales & Salvage, Inc., No. 1372 MDA 2014, 2015 WL 6965725, at *8 (Pa. Super. Ct. June 24, 2015) (holding that defendant's operation of a scrap metal recycling business which produced sounds "like Beirut" was a public and private nuisance, because the harm was of a continuing nature and had a significant effect on the "public right").  See also Tiongco v. Sw. Energy Prod. Co., 214 F. Supp. 3d 279, 285 (M.D. Pa. 2016) (applying same objective standard test of normal persons living in the community).

allegations are not merely that the Plaintiffs have been slightly annoyed by temporary conditions existing on the adjacent property; instead, they allege that their right to enjoy their own property has been impaired in a serious way for an extended period of time.  Thus, the Court concludes that the Plaintiffs have plausibly alleged a significant harm.

Therefore, the Court concludes that the Plaintiffs have adequately alleged claims for both a public and a private nuisance.

d.   <u>Gist of the Action Doctrine</u>

Finally, the Defendant argues that the Pennsylvania gist of the action doctrine precludes the Plaintiffs from reframing their breach of contract claims as tort claims.  The Defendant asserts that the nuisance claims are just a recasting of the Plaintiffs' breach of contract claims.  The Defendant cites two cases where federal courts, applying Pennsylvania's gist of the action doctrine, dismissed tort claims, including private nuisance claims, because they were based on alleged failures to uphold contractual requirements.[90]

The Plaintiffs respond that, where a contract incorporates obligations that exist independent of the contract, the gist of the action doctrine does not preclude the assertion of both a

---

[90]   <u>Confer v. EXCO Resources, L.L.C.</u>, No. 4:13-cv-2178, 2013 WL 12203016, at *4-5 (M.D. Pa. Nov. 19, 2013); <u>Foster v. City of Philadelphia</u>, No. 12-5851, 2013 WL 12149716, at *1 n. 1 (E.D. Pa. Sept. 12, 2013).

32

breach of contract and a tort claim.[91]  The Plaintiffs also
contend that they are allowed to plead alternative causes of
action under Rule 8(d)(2).[92]

Under Pennsylvania caselaw, trespass and private nuisance
claims may be dismissed under the gist of the action doctrine in
limited circumstances.

> The gist of the action doctrine has been applied in
> Pennsylvania under limited circumstances for causes of
> action in tort: (1) arising solely from a contract
> between the parties; (2) where the duties allegedly
> breached were created and grounded in the contract
> itself; (3) where the liability stems from a contract;
> or (4) where the tort claim essentially duplicates a
> breach of contract claim or the success of which is
> wholly dependent on the terms of a contract.[93]

"The mere existence of a contract between two parties does
not, ipso facto, classify a claim by a contracting party for
injury or loss suffered as the result of actions of the other
party in performing the contract as one for breach of

---

[91]    Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014).

[92]    Fed. R. Civ. P. 8(d)(2), (3) (A plaintiff may assert claims
in the alternative, regardless of consistency.).  See also
Broederdorf v. Bacheler, 129 F. Supp. 3d 182, 198 n.10 (E.D. Pa.
2015) (noting that gist of the action and economic loss arguments
"are wholly inappropriate for this stage of litigation. [The
Plaintiff] is entitled to state alternative claims in his
pleadings pursuant to Fed. R. Civ. P. 8(d)(2) and (3).").

[93]    Foster, 2013 WL 12149716, at *1 n.1 (dismissing tort claim
because the lease agreement "controls the precise situation
complained of in [the plaintiff's] tort claims").  See also
Confer, 2014 WL 12704714 at * 5 (concluding that the gist of the
action doctrine applied because the tort claims arose primarily
from the breaches of the lease at issue).

contract."[94]  The Third Circuit has stated that the appropriate focus in determining whether the gist of the action doctrine precludes a claim for both breach of contract and tort was "on the nature of the duty alleged to be breached, not merely on whether the contractual duties were sufficiently intertwined with the alleged torts."[95]

Although the REA prohibits the parties from allowing a condition that constitutes a nuisance at common law,[96] the Court concludes that the Defendant's argument that the nuisance claim is just a reframing of a breach of contract claim is not persuasive.

First, while the Plaintiffs' nuisance claims and the breach of contract claims do have some overlap, they largely involve separate issues and separate areas.  For example, the nuisance claims do not rely only on the Defendant's failure under the REA to maintain the common areas over which the Plaintiffs assert an easement.  Instead, the Plaintifss allege an overall neglect of

---

[94]   Bruno, 106 A.3d at 69 (reversing and remanding order dismissing negligence claim based on gist of the action doctrine).

[95]   Downs v. Andrews, 639 F. App'x 816, 820 (3d Cir. 2016) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract.") (affirming dismissal of complaint under gist of the action doctrine).

[96]   Adv. D.I. 7, Ex. 2 at Section 5(b).

the Defendant's property.  Thus, the Court finds that the
nuisance claims do not merely duplicate the breach of contract
claims and their success is not wholly dependent on the terms of
the REA.

Second, the nuisance claim could be brought even if the REA
did not prohibit allowing the persistence of a common law
nuisance.  The Plaintiffs allege that the Defendant has a duty
defined by tort law rather than the terms of the contract, which
exists wholly independently of the terms of the REA.  In
addition, the damages sought by the Plaintiffs are not limited to
those specifically enumerated in the REA.  Any other neighbor of
the Defendant might bring a similar nuisance claim without the
benefit of a contract with the Defendant.

The Court therefore concludes that the gist of the action
doctrine would not bar these claims.

In addition, Rule 8 specifically allows, at the pleading
stage, the assertion of inconsistent claims.[97]  While the gist of
the action doctrine seeks to preclude a double recovery on both a
tort theory and a breach of contract theory, the rules do permit
the assertion of such theories alternatively at the pleading
stage.[98]

---

[97]    See Fed. R. Civ. P. 8(d)(2), (3) (a plaintiff may assert
claims alternatively, regardless of consistency).

[98]    See, e.g., Crum & Forster Indem. Co. v. Sidelines Tree
Serv., LLC, 557 F. Supp. 3d 616 (W.D. Pa. 2021) (declining to
apply gist of the action doctrine at motion to dismiss stage);

Accordingly, the Court concludes that the Plaintiffs have adequately pled claims for both a public and a private nuisance and for breach of contract. Consequently, the Court will deny the Motion to Dismiss those claims.

V.    CONCLUSION

For the foregoing reasons, the Court will deny the Motion for Partial Dismissal of the Amended Complaint, except with respect to paragraphs 128(g) and 130(h) which the Plaintiffs agree can be dismissed.

An appropriate Order is attached.

Dated: January 10, 2024                    BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

---

Odgers v. Progressive N. Ins. Co., 112 F. Supp. 3d 286, 292 (M.D. Pa. 2015) (same, collecting cases).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors, | ) | |
| | ) | |
| IS BBFP LLC, and | ) | |
| IS 245 North 15th LLC, | ) | |
| | ) | |
| | ) | Adv. No. 23-50337(MFW) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTER CITY HEALTHCARE, LLC | ) | |
| | ) | Re: Adv. D.I. 7, 11, 12, |
| Defendant. | ) | 20, 21, 23, 24 |

## O R D E R

**AND NOW** this **10th** day of **JANUARY, 2024,** upon consideration of the Defendant's Motion to Dismiss the Plaintiffs' Amended Complaint and the Plaintiffs' Response thereto, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion to Dismiss the Amended Complaint is **GRANTED IN PART AND DENIED IN PART;** and it is further

**ORDERED** that pursuant to the Plaintiffs' agreement, paragraphs 128(g) and 130(h) of the Amended Complaint are **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that in all other respects the Motion to Dismiss is **DENIED**; and it is further

**ORDERED** that the Defendant shall file and serve a response to the surviving provisions of the Amended Complaint on or before fourteen (14) days from the entry of this Order, unless otherwise agreed by the parties.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge