# EXHIBIT F

| | |
|---|---|
| From: | Sickle, David B. |
| Sent: | Monday, December 18, 2017 6:08 PM EST |
| To: | Joel Freedman (jfreedman@pldn.com); Gosfield, Gregory |
| CC: | Burkemper, Mark (HSRE); Berkoff, Adam T.; Michael Gershowitz (MGershowitz@harrisonst.com); Michael Borchetta |
| Subject: | FW: paladin - HSRE easement agreement |
| Attachments: | paladin - HSRE easement agreement.msg.eml |

Joel/Greg – would you be available from 11-12:30 (eastern) tomorrow to go over the REA? If not, please propose alternate meeting time(s). I will send an invite with a call-in number once we pick a time.

Mark, if anyone else at HSRE is appropriate for this discussion, please rope them in.

My e-mail below can serve as an agenda for our call, with reference to Greg's revised draft of the REA (attached).

**From:** Sickle, David B.
**Sent:** Saturday, December 16, 2017 10:52 AM
**To:** 'Gosfield, Gregory'
**Subject:** RE: paladin - HSRE easement agreement

I truly appreciate your thoughtful mark-up. Here are my high-level comments on your revisions. I am in the office today if you want to discuss.

1. Recital D and footnote 1 -- Even if one of the HUH lots is not affected by the easement provisions, shouldn't it be covered by the general operating covenants?
2. BOMA/Lot Floor Area – Our thought is that we should follow the measurement standard under the zoning code, because that's the root of many of our issues. More substantively, we provided a floor of 20% of max permitted floor area to make sure that a lot owner does not become a free-rider on costs merely because its lot is unimproved.
3. Encroachments – I don't think any owner should be required to allow future encroachments. What's there today is okay, and can be maintained, but future development should be on an independent basis.
4. Fair Market Value – Strongly disagree that cost-sharing should be based on FMV.
5. "Lease" Insurance Provisions and related references throughout – It seems that you introduced this term primarily to tie into insurance and related provisions. I don't think this works for 2 reasons. First, the key point of the REA is to provide a framework for easements and operations _after_ the expiration of the Master Lease (that is, during the term of the Master Lease, Paladin has possession and control (and responsibility for) the whole site anyway); second, I grabbed the insurance provisions from the CapOne loan dox, which will govern by necessity.
6. Maintenance Costs/CapEx – I think the amortization method is more appropriate. It's not penal to the affected owner, and (more to the point) the affected owner has less incentive to make improvements at the cost and expense of its neighbors who do not have material input in the replace vs. repair decision-making.
7. Maintenance Costs/Utilities – Aside from utilities for the Common Utility Plant, it seems like pennies on the dollar here. What utility costs are consumed to maintain the other easement facilities?

8. Helipad Maintenance – we want no part of this.
9. Operating Standard – HSRE specifically dictated the "first class" standard. It applies equally to the HSRE properties and the Paladin properties. Doesn't "due consideration to the age" cover both of us?
10. Project Engineer – I just thought that we mutually agree that Pennoni knows the property best. They won't be paid anything and won't have any role under the REA unless/until a dispute arises under the specific "Arbitration Matters." Aside, agreement by the parties over a replacement arbitrator is a pipe dream. We should give this control to one property owner – New College – and if necessary add protections to ensure independence. Much more importantly, I'm glad that I can now check off "sincecure" from my list of SAT words that I have used in 2017. I thank you for this one!
11. Shared Parking – We need to confirm with clients if any parking is used in common. Who uses the parking today (or is it operated as a public lot)? Who knows this?
12. Shared Loading Dock – We need to confirm with clients who should be the coordinator of the Loading Dock after expiration of the Master Lease.
13. Collective Bargaining section 4(a) – Strongly disagree. The fact that one party is subject to a union CBA should not constrain the others.
14. Unity of Use Provision – I don't really care how/where its recorded, but we NEED a mechanism to handle the (extremely unlikely) appeal of the Permits. HSRE is trying to accommodate Paladin (and Tenet) by closing prior to the expiration of appeals, but we need to implement a "Plan B" if the Permit is revoked/rescinded by appeal. I can't tell if you disagree with the substance, or only the form/location of this covenant.
15. Alterations – Do you think it makes sense to delve into "material cost?" I toyed with this idea in my drafting – one of the many provisions that I negotiated in my head for days – and came to the conclusion that the parties' mutual goal should be to reduce inter-dependence. The "no material increase in cost" would seem to provide a convenient out for any party who didn't want to make changes. (The real focus, I think, is on the Common Utility Plant. I don't even know on which Lot this is located, but I thought that if Benefited Owner was undergoing 50% redevelopment, it should build its own independent utilities.
16. Damage/Restoration – We don't think that a party should be required to rebuild just to restore interior access between buildings. If adjacent buildings are connected by a hallway on the 10th floor and one of the buildings is destroyed, then the obligation to restore seems to be the "tail wagging the dog" and the unaffected property should just close off the hallway. In any event, restoration to pre-casualty value is not an appropriate standard because we have [no] economic interest in each other's property.
17. Lien rights – do you think it makes sense to have pre-judgment lien rights for unpaid Maintenance Assessments? I don't feel awfully strongly about this. It would seem to benefit the Providing Owner of the Common Utility Plant.
18. Notices – I intend to be long-retired, if not interred, before any notice is given under the REA, but I appreciate your kind wishes.
19. Mortgage subordination – are all existing mortgages being paid/satisfied? We need Tenet (as well as Cap One and Paladin's line lender of course) to consent and subordinate to this REA.
20. Arbitration – we intend to limit Arbitration Matters to technical/engineering matters. Regulatory specialist – presumably you mean hospital regulations – should have no role in this. Related, we don't think that baseball arbitration is appropriate. We are prepared to live with any compromise position that Pennoni (or its replacement, if Pennoni is unwilling or unable to serve) recommends in these limited cases.

KLEHR_003778

21. Rule Against Perpetuities – I didn't write this one, but I didn't delete it because my wife and I have been watching The Crown and I'm feeling quite sympathetic to her, err, Her Majesty's, diminished relevance.

**David Sickle**
Partner

T +1 312.368.4081
F +1 312.630.7361
M +1 312.218.5306
E david.sickle@dlapiper.com



DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
United States
www.dlapiper.com

---

**From:** Gosfield, Gregory [mailto:GGosfield@klehr.com]
**Sent:** Friday, December 15, 2017 7:03 PM
**To:** Sickle, David B.
**Subject:** paladin - HSRE easement agreement

David

In the spirit of expediency , and without having shared it with my client, I wanted to show you some of my thoughts. I worked with your draft, and I believe my tweaks are consistent with your thinking but before I spent more time trying to refine and reconcile it with the Mater Lease form, I wanted you to talk a look to see if you agree in general, that I should proceed to finish comments.

Thanks

Greg



Gregory G. Gosfield, Esquire
KLEHR | HARRISON | HARVEY | BRANZBURG LLP
BUSINESS LAW AT BUSINESS SPEED
1835 Market Street, Suite 1400 | Philadelphia, PA  19103
T (215) 569-4164 | F (215) 568-6603 | ggosfield@klehr.com
www.klehr.com

Web page: Greg Gosfield's profile site
Author of: "Ten Core Concepts for Healthcare Lease Provisions" Chapter 13 of the Health Law Handbook; 2013 Thomson Reuters
   The Medical & Healthcare Facility Lease: Legal and Business Handbook; 2011 American Health Lawyers Association

KLEHR_003779

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

KLEHR_003780