# EXHIBIT Y

JOKELSON LAW GROUP, P.C.
ATTORNEYS AT LAW
230 South Broad St., 10th Fl.
Philadelphia, PA 19102

Tel. (215) 735-7556
Fax (215) 985-0476

David E. Jokelson
Derek E. Jokelson
Debra M. Jokelson*
*Of Counsel

January 22, 2024

*Via email (jeffrey.hampton@saul.com)*
Jeffrey Hampton, Esquire
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, DE 19801

Re:    In re Center City Healthcare, LLC, et al., Case No. 19-11466 (MFW);
       IS BBFB LLC et al. v. Center City Healthcare, LLC, Adv. No. 23-50447

Dear Jeff:

Per our conversation today, I am directing this letter to you in Mark's absence.

Now that the court has squarely rejected Defendant's positions on the easement and nuisance issues, I am writing to demand that Defendant mitigate the damages being caused to my clients and immediately:

1.    Remove all parking and traffic blockades on Parcels D and E;

2.    Set appropriate rules and procedures to allow my clients and their tenants to park in the parking lots on Parcels D and E (known as the Feinstein Lot and Bobst Lot) including handicapped parking;

3.    Install bicycle parking apparatus (or agree to allow my clients to do so) to conform to the zoning permit;

4.    Stripe the parking lots (or agree to allow my clients to do so);

Mark Minuti, Esquire
January 22, 2024
Page 2 of 3

5.     Restore the sign pedestal at the base of the RSL access ramp so that my clients may update the signage to reflect the current address and identification of the RSL building (formerly the Bobst building);

6.     Allow my clients to complete the entrance walkway, paneling, and lighting in the access ramp area as designed so there is code compliant, appropriate, and safe ingress and egress;[1] and

7.     Repair and clean the drain at the end of RSL access ramp which is out of alignment and filled with debris.

I am also writing to add two forward-looking maintenance items. *First*, I request that CCH confirm that it will promptly remove graffiti and other unsightly conditions from their buildings as these conditions occur. While driving past the property this past weekend, I noticed graffiti on the Broad Street side of the South Tower. Such conditions attract additional unsightly conditions if not dealt with promptly. *Second*, I ask that CCH work with my clients to confirm who is responsible to remove snow and ice from the various lots and at whose costs.

Finally, I write in the hope of deterring CCH from taking unwarranted litigation positions going forward. While the court phrased some of its holdings in terms of ambiguity, the court made numerous findings squarely rejecting clearly unreasonable positions that CCH advanced in its Motion to Dismiss.

*First*, the court found that "[t]he EUU itself is clearly an agreement," despite CCH's unreasonable argument that it was "merely a statement and not an agreement." (Op., p. 13).

*Second*, the court found that the easement granting language in EUU §1.1 italicized below was legally sufficient to create an easement:

> **Easement**. *Owners hereby establish and create*, for the benefit of all six (6) Parcels, *reciprocal easements* that allow all six (6) Parcels to use and enjoy all common areas, and use the Property as if it were comprised of one parcel for zoning purposes, as more specifically described in an Operation and Reciprocal Easement Agreement among the Owners, to be recorded immediately hereafter.

While CCH argued that this language was somehow "insufficient" to create an easement, the Court had no problem disposing of this unsupportable argument through the clear language of the grant,

---

[1] As previously noted, my clients will effectuate any reasonable modification of the plans desired by CCH as Plaintiffs' sole intention is to provide safe, code-compliant ingress and egress for pedestrians and vehicular traffic, consistent with the applicable City Codes and the REA's Operating Standard.

Mark Minuti, Esquire
January 22, 2024
Page 3 of 4

holding that these words "expressly state that the parties are 'establish[ing] and create[ing]' an easement." (Op., p. 15) (alterations in original).

*Third*, the court rejected CCH's untenable argument that the easements "created by the EUU were illusory," because they were somehow limited to zoning purposes (even though such language did not appear in section 1.1 of the EUU). More importantly, the Court held that the language of the EUU creates an "easement for access and use" for "the parking lots and access ramps, *even if it was for zoning purposes only*" (emphasis added):

> Furthermore, even if the creation of the easement in the EUU was for zoning purposes only [a position advanced by Defendant but rejected by the court], it does not follow that an easement allowing access and use was not created. As the Plaintiffs' counsel explained at oral argument, Philadelphia zoning requirements include having adequate parking and areas for loading, as well as street access, for each parcel. The zoning site map attached to the EUU explains in detail the way in which the total number of parking spaces of the combined parcels satisfies the zoning requirements for each parcel.[2] Therefore, it is reasonable to read the EUU as creating an easement in the parking lots and access ramps, even if it was for zoning purposes only.

(Op., p. 18). CCH's conduct in this case has been squarely at odds with this holding and has caused considerable damage to my clients.

As made clear from the Court's opinion, CCH has taken unreasonable positions in its Motion to Dismiss (including that the EUU is not an agreement, that the EUU is an illusory document, and that the zoning requirements for accessory use are somehow meaningless).

From my clients' vantage, CCH has taken these unwarranted and unsupportable positions to harass, cause unnecessary delay, or needlessly increase the cost of this litigation. Indeed, this litigation to date has required an extraordinary expenditure of resources by Plaintiffs *as well as by*

---

[2] As noted, the EUU calls out the accessory parking and accessory signage usages on Parcels D and E. The *accessory* uses of for parking, handicap parking and bicycle parking, are all stated on the Zoning Plan (approved by L&I prior to recording the EUU) as follows:

|  | Parking Requirements | |
|---|---|---|
|  | **Parcel D** | **Parcel E** |
| **Required Off Street Parking** | 68 | 84 |
| **Parking for Persons with Disabilities** | 2 | 0 |
| **Bicycle Spaces** | 0 | 46 |

Mark Minuti, Esquire
January 22, 2024
Page 4 of 4

*the CCH bankruptcy estate.* Frankly, this litigation has been an unfortunate waste of time and resources. Had CCH simply worked with my clients from the beginning, consistent with the mutual agreements amongst their predecessors in interest, the expense on both sides *could* have (and *should* have) been entirely avoided.

      Should CCH continue to advance such unwarranted positions, Plaintiffs reserve the right to seek appropriate sanctions and remedies.

Very truly yours,

Derek E. Jokelson

DEJ/ab
cc:    Jeffrey M. Carbino, Esquire (*via email*)
       Jeffrey Kurtzman, Esquire (*via email*)