# EXHIBIT Z

**JOKELSON LAW GROUP, P.C.**
ATTORNEYS AT LAW
230 South Broad St., 10th Fl.
Philadelphia, PA 19102

Tel. (215) 735-7556
Fax (215) 985-0476

David E. Jokelson
Derek E. Jokelson
Debra M. Jokelson*
*Of Counsel

January 24, 2024

*Via email (mark.minuti@saul.com)*
*(jeffrey.hampton@saul.com)*
Mark Minuti, Esquire
Jeffrey Hampton, Esquire
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, DE 19801

   Re: In re Center City Healthcare, LLC, et al., Case No. 19-11466 (MFW);
      IS BBFB LLC et al. v. Center City Healthcare, LLC, Adv. No. 23-50447

Dear Mark and Jeff:

  I am writing as a follow-up to my letter of January 22, 2024, and particularly with regard to the immediate need for signage.

  As I am sure CCH is aware, since CCH's filing of its Motion to Dismiss, Plaintiff has been marketing and has begun renting portions of the RSL (formerly Bobst) building. My clients' first tenant is Zahav Biosciences, whose mission is cancer drug development.

  Since moving in, Zahav Biosciences has been having significant problems with people finding the building. While there is an issue with the Postal Service registering the 1421 Race Street address that my clients are working on, the lack of signage at the base of the access ramp is causing Zahav significant difficulty. Reproduced below is an email from Zahav's Biosciences' CEO documenting their issues and requesting that signage be placed immediately:

> **From:** Saba Malak
> **Sent:** Tuesday, January 23, 2024 3:36 PM
> **To:** Peter Wieck
> **Cc:** Washington, Darrell; Eric Peters; Carolyn Soccio; Jacob Brodie
> **Subject:** Deliveries and visits to Race Street Labs
>
> Dear Peter,
>
> As discussed, we have had a large number of deliveries by FedEx and UPS go missing. This has even included important biologics delivered on dry ice

Mark Minuti, Esquire
Jeffrey Hampton, Esquire
January 24, 2024
Page 2 of 7

> which were delivered a block away. In most cases, we have been unable to locate the lost items.
>
> As a biotech company we receive many high value deliveries- losing one of these can be very significant to us. Aside from the amount of wasted time spent trying to locate missing items, many lost items have the potential to significantly disrupt our business. We have tight timelines and executing our work is often dependent on receiving multiple items. Bottom line, resolving this issue is extremely important to us and as continuation as is can cause serious problems for us.
>
> Also, we have found that Uber and taxi drivers are having a hard time locating the building. In some cases visitors missed their appointments or never made it because their drivers got lost.
>
> There appears to be an issue related to some GPS systems being able to locate the building. **The building being offset from the street is another problem as people often miss it. It is therefore imperative that you install large signage at the end of the building driveway. This will help people know they have arrived to Race Street Labs, 1421 Race Street, and that they need to turn left into the driveway and drive up to the building.**
>
> This is an important and time-sensitive matter for us. **I would appreciate your and your colleagues' diligent effort to get the signage in place so that we can resolve this problem as soon as possible.**
>
> Thank you.
>
> Saba Malak
> CEO, Zahav Bioscience

(emphasis added).

    I therefore request an *immediate* response with regard to my clients demand that CCH restore the sign pedestal at the base of the RSL access ramp and allow my clients to update that signage as previously requested. In the event that CCH refuses to do so, I expect that my clients will be forced to file a motion for injunctive relief with the Court within the next week.

    For the sake of context and clarity, and in the event I need to attach this letter to a motion filed with the Court, and while not entirely elegant, I reproduce below my letter to Mr. Minuti from April 21, 2023, detailing my clients' request for signage, the history of the sign pedestal at the base of the access ramp, its removal, and the relevant accessory signage language in the EUU:

I am writing to request CCH's approval for accessory signage at the base of the ramp leading to the former Bobst Building (now called the Race Street Labs, or RSL). Specifically, my clients would like to install accessory signage consistent with the image below:



Please note that there was business identification and patient drop-off signage on a sign pedestal at the base of the east ramp wall of the Bobst Access Ramp which appeared as follows until the hospital's closure:



Mark Minuti, Esquire
Jeffrey Hampton, Esquire
January 24, 2024
Page 4 of 7

And then appeared as follows following the hospital's closure:



And as of November 2022, appeared as follows as:



Most recently, it appears that someone has removed the sign pedestal entirely as shown in the photograph below:

Mark Minuti, Esquire
Jeffrey Hampton, Esquire
January 24, 2024
Page 5 of 7



I ask that CCH please confirm who removed the sign pedestal.

Until its recent removal, the pre-existing signage was used by dialysis patients in my clients' building after their purchase of the property. Now that the old sign pedestal has been removed, and now that my clients' building (formerly known as the Bobst Building) is being repurposed to the Race Street Labs, it is time for renewed signs to direct building users to the building and vehicles to my clients' parking spots on my clients' parcels.

In this regard I note that the EUU makes clear that Parcels D and E contain Accessory Sign rights available to all of the property owners of the Former Hahnemann Properties, which accessory use continues and is binding on all present and future owners:

> Exordium ¶D. Owner 4 owns certain real property, Parcel D and Parcel E described on Exhibit D attached hereto and made a part hereof, having addresses of 200-14 N. Broad Street, Philadelphia, Pennsylvania, which is OPA Account Number 88-5-4678-62, and 201-19 N. 15th Street,

Mark Minuti, Esquire
Jeffrey Hampton, Esquire
January 24, 2024
Page 6 of 7

>  Philadelphia, Pennsylvania, which is OPA Account Number 77-2-0284-96, respectively, comprised of approximately 27,491.71 and 38,821.60 square feet, respectively, and currently used for the following purposes: Accessory Surface Parking Lot and **Accessory Signs with respect to Parcel D** and Educational Facilities, Accessory Surface Parking Lot, and **Accessory Signs with respect to Parcel E, with a proposed use of:** Accessory Surface Parking Lot and **Accessory Signs with respect to Parcel D and** Educational Facilities, Accessory Surface Parking Lot, and **Accessory Signs with respect to Parcel E.**
>
>  Section 2.1 <u>Unity of Use</u>. For purposes of zoning, exclusively, **all four (4) Owners hereby agree and state that the Parcels shall be considered one contiguous parcel of land.** In connection therewith, Owners hereby agree and covenant that the **Parcels shall be used in such a manner as if the six (6) parcels that comprise the Property were one zoning property. Such current and proposed use of the Property is for** Hospital, Group Medical, Dental, and Health Practitioners, Educational Facilities, Accessory Offices, Building Services, Accessory Surface Parking Lot, Wireless/cellular Antennas, Accessory Signs **and Building ID Signs purposes**.

(emphasis supplied).

As such, I request that CCH expeditiously approve this signage. Thank you.

The foregoing letter was sent to CCH on April 21, 2023. Following this correspondence, my clients were able to confirm that it was in fact CCH that had removed the sign pedestal.

On April 25, 2023, CCH responded through your law firm by taking the position that CCH "was not in a position to respond to the request" concerning the signage issue as it "will be resolved by the Bankruptcy Court in the Adversary Proceeding." CCH's response went on to state that CCH "den[ies] that [my] clients have any right to install the proposed signage on the Debtors' property," warned that "any actions by [my] clients to place the signage…will be viewed as a further attempt by [my] clients to improperly exercise exclusive use and control over the Debtors' property," and concluded by stating that "To the extent [my] client attempts to install signage on the Debtors' property, such attempts will be stopped and, if not timely stopped, such signage will be removed."

Mark Minuti, Esquire
Jeffrey Hampton, Esquire
January 24, 2024
Page 7 of 7

Later CCH filed its motion to dismiss arguing, *inter alia*, that "Nothing in the REA or the EUU Grants the Plaintiffs the Right to Signage or Parking on the Debtor's Parcels D & E" (D.I. 12, pp. 22-24. This argument was then rejected by the court in is denial of the Motion to Dismiss.

I note CCH's willful removal of the sign pedestal, and its refusal to allow my clients to place updated signage, is not only a violation of the covenants in the EUU, but also constitutes a nuisance.

I also note that the Philadelphia Zoning Code defines "**Sign, Accessory**" as a "sign that directs attention to information, identification, or advertisements strictly incidental to a lawful use of the premises on which the sign is located. This includes signs or devices indicating the business transacted, services rendered, goods sold or produced on the premises, and name or emblem of the person, firm, institution, organization, or activity occupying the premises." §14-203(278).

As such, I am hoping that given the court's recent ruling and the current occupancy of this building by tenants, that CCH will now allow the sign pedestal to be replaced and the signage updated so that tenants, guests, delivery personnel and sother can find this building (including those invitees of Zahav Biosciences who are helping their mission of cancer research).

If CCH does not agree, my clients will have little choice but to press the issue with the court on a time-sensitive basis. Accordingly, please get back to me by the end of this week with CCH's response (and hopefully CCH's agreement).

Very truly yours,

Derek E. Jokelson

DEJ/ab
cc:   Jeffrey M. Carbino, Esquire (*via email*)
      Jeffrey Kurtzman, Esquire (*via email*)