**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors, | ) | |
| | ) | |
| IS BBFP LLC, and | ) | |
| IS 245 North 15th LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 23-50337(MFW) |
| | ) | |
| v. | ) | |
| | ) | |
| CENTER CITY HEALTHCARE, LLC | ) | |
| | ) | Re: Adv. D.I. 7, 11, 12, |
| Defendant. | ) | 126, 127, 132, 133 |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of IS BBFP LLC and IS 245 North 15th LLC (the "Plaintiffs") for Partial Judgment on the Pleadings on their Amended Complaint and the Opposition thereto filed by Center City Healthcare, LLC (the "Defendant"). For the reasons stated below, the Court will deny the Motion.

I. BACKGROUND

On June 30, 2019, and July 1, 2019, the Defendant and some of its affiliates (collectively the "Debtors") filed petitions

---

[1] The Court is not required to state findings of fact or conclusions of law on a motion for judgment on the pleadings pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Noramco LLC v. Dishman USA, Inc., No. 21-1696-WCB, 2022 WL 2817876, at *2 (D. Del. July 19, 2022).

under chapter 11 of the Bankruptcy Code. Prior to filing, the Debtors operated two hospitals in the Philadelphia area — St. Christopher's Hospital and Hahnemann University Hospital ("HUH").[2] HUH's main campus was located on the block bounded by Broad, 15th, Race and Vine Streets.[3] In a 2018 transaction, this real estate had been sold to holding companies in six newly designated parcels, while the HUH operating entity had been sold to the Defendant. HUH was closed during the bankruptcy case.[4]

The real estate companies were not included in the bankruptcy filing, and post-petition, independent of the bankruptcy cases, the Plaintiffs acquired two of the parcels in the block (Parcels B and C, containing the New College, Bobst, and Feinstein Buildings). The remaining parcels (Parcels A, D, E, and F, containing the North and South Towers, the SHSH Building, and parking lots and access ramps) were transferred to the Defendant as part of a global settlement agreement (the "MOU").[5]

---

[2] D.I. 2, ¶¶ 9-10, 13. References to the docket in the bankruptcy case are to "D.I. #" and references to the docket in the instant adversary proceeding are to "Adv. D.I. #."

[3] Adv. D.I. 7, ¶ 10.

[4] D.I. 4200, ¶ 19.

[5] The Plaintiffs objected to the proposed global settlement agreement, concerned that their rights under the EUU and REA would be affected. D.I. 4184. As a result, language was added to the order approving the MOU which reserved both the Plaintiffs' rights and the Defendant's defenses. D.I. 4216.

On May 16, 2023, the Plaintiffs filed an Amended Complaint[6] seeking (1) declaratory relief related to their rights to access and make repairs to areas owned or controlled by the Defendant, (2) damages resulting from the Defendant's alleged breach of contract, (3) damages resulting from alleged nuisance conditions caused by the Defendant's failure to maintain its property, and (4) injunctive relief requiring the Defendant to maintain its property.  The claims are predicated on an Easement and Unity of Use Agreement (the "EUU") and a Reciprocal Easement and Operating Agreement (the "REA"), as well as statutory and common law relating to nuisances.

On June 1, 2023, the Defendant filed a Partial Motion to Dismiss the Plaintiffs' claims for (1) declaratory relief and damages arising from an alleged express easement, (2) the nuisance claims, and (3) the claim for injunctive relief.  After briefing and oral argument, by Memorandum Opinion and Order dated January 10, 2024 (the "Dismissal Opinion"),[7] the Court denied the Motion to Dismiss except to the extent that the Plaintiffs had already consented to dismiss certain claims.[8]

---

[6]   Adv. D.I. 11.

[7]   Adv. D.I. 36, 37.

[8]   In their Response to the Motion to Dismiss, the Plaintiffs agreed to dismiss the claims in paragraphs 128(g) and 130(h) of the Amended Complaint.  Adv. D.I. 21 at 2, n.2.

Subsequent to that ruling, the Defendant filed its Answer and Counterclaims on January 31, 2024,[9] and the Plaintiffs filed their Answer to the Counterclaims on February 14, 2024.[10]

On December 13, 2024, the Plaintiffs filed a Motion for Partial Judgment on the Pleadings, seeking a declaratory judgment that the Plaintiffs are entitled to ongoing accessory signage and accessory surface parking on Parcels D and E of the Defendant's real estate.[11] The Motion has been fully briefed and is ripe for decision.[12]

II. **JURISDICTION**

The Court has subject matter jurisdiction over this core adversary proceeding.[13] In addition, the parties have consented to entry of final orders by the Court.[14]

---

[9] Adv. D.I. 40.

[10] Adv. D.I. 54.

[11] Adv. D.I. 126.

[12] Adv. D.I. 127, 132, 133.

[13] 28 U.S.C. §§ 157(b) & 1334(b).

[14] The parties have expressly consented to entry of a final order by this Court. Adv. D.I. 7, ¶ 9; Adv. D.I. 40, ¶ 8 of Counterclaims. Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 686 (2015) (holding that the bankruptcy court may enter a final order without offending Article III so long as the parties consent).

III. <u>STANDARD OF REVIEW</u>

    A.   <u>Rule 12(c)</u>[15]

The Plaintiffs base their Motion for Judgment on the Pleadings on Rule 12(c), which provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."[16] A court should grant judgment on the pleadings pursuant to Rule 12(c) "when the pleadings themselves demonstrate that there are no material issues of fact and the moving party is entitled to judgment as a matter of law."[17] In considering a Rule 12(c) motion, the court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non moving party."[18] In this respect, the standard is the same as that for a motion to dismiss under Rule 12(b)(6).[19]

---

[15] Citations herein are to the Federal Rules of Civil Procedure which are incorporated into the Federal Rules of Bankruptcy Procedure. <u>See</u> Fed. R. Bankr. P. 7012.

[16] Fed. R. Civ. P. 12(c).

[17] <u>SNMP Research Int'l, Inc. v. Nortel Networks Inc. (In re Nortel Networks Inc.)</u>, 09-10138(KG), Adv. No. 11-53454(KG), 2016 WL 2584092, at *3 (Bankr. D. Del. May 2, 2016) (citing <u>Bayer Chems. Corp. v. Albermarle Corp.</u>, 171 Fed. Appx. 392, 397 (3d Cir. 2006)).

[18] <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d 289, 290-91 (3d Cir. 1988) (citations omitted).

[19] <u>See, e.g.</u>, <u>Alpizar-Fallas v. Favero</u>, 908 F.3d 910, 914 (3d Cir. 2018); <u>UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC)</u>, 610 B.R. 779, 783 (Bankr. D. Del. 2020).

Also similar to a motion to dismiss, in deciding a motion for judgment on the pleadings, the court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[20]

B. Contract Interpretation

In a contractual dispute, the court should grant judgment on the pleadings when the terms of the contract are unambiguous and are dispositive of the issue at bar.[21] Under Pennsylvania law,[22] "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement."[23] Courts applying Pennsylvania law are required to give effect to a contract's clear and unambiguous language.[24]

---

[20] Alpizar-Fallas, 908 F.3d at 914; Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019).

[21] Nortel, 2016 WL 2584092, at *5.

[22] The Court has already determined that Pennsylvania law applies to the interpretation of the contracts at issue in this case. Adv. D.I. 36 at 10.

[23] In re Old Summit Mfg., LLC, 523 F.3d 134, 137 (3d Cir. 2008). See also Pa. Env't Def. Found. v. Pennsylvania, 255 A.3d 289, 304 (Pa. 2021).

[24] 401 Fourth Street, Inc. v. Invs. Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). See also Com., ex rel. Kane v. UPMC, 129 A.3d 441, 463 (Pa. 2015) ("If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties.").

If a contract's terms are ambiguous, however, the question is one of fact requiring evidence of the intention of the parties and the surrounding circumstances.[25] Contractual terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."[26] "A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction."[27]

C.  Easements

Under Pennsylvania law, courts construe easements in the

---

[25] Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 201 (3d Cir. 2001) ("If the contract as a whole is susceptible to more than one reading, the fact finder resolves the matter.") (internal quotes omitted). See also Merrill v. Mfrs. Light & Heat Co., 185 A.2d 573, 575-76 (Pa. 1962) (stating that where a disputed term of an agreement is ambiguous, the court should then look to "attending circumstances" to construe it).

[26] Madison Constr. Co., v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

[27] Baney v. Eoute, 784 A.2d 132, 136 (Pa. Super. Ct. 2001). See also Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982) ("In holding that an ambiguity is present in an agreement, a court must not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity. Thus, the meaning of language cannot be distorted to establish the ambiguity.").

7

same manner as other contracts.[28]  The Pennsylvania Courts have found an easement ambiguous when important terms are left undefined or its scope is not specified.[29]

IV. DISCUSSION

In their Motion for Judgment on the Pleadings, the Plaintiffs contend that the EUU and REA create easements which "clearly call for accessory parking and accessory signage on parcels D and E for the benefit of all owners."[30]  In support, they assert that the EUU created a Unity of Use of all the parcels[31] and was a recognition that the "parcels are so

---

[28]   "In effect, an easement is interpreted in the same manner as any other contract; if the language of the agreement is clear, our inquiry is ended; if it is ambiguous, then the trier of fact determines the intent of the parties." Joiner v. Sw. Cent. Rural Elec. Co-op. Corp., 786 A.2d 349, 352 (Pa. Commw. Ct. 2001) (vacating the lower court's decision because scope of easement was ambiguous).

[29]   PARC Holdings, Inc. v. Killian, 785 A.2d 106, 112 (Pa. Super. Ct. 2001) (holding that the trial court's consideration of extrinsic evidence in interpreting easement was appropriate because the easement was stated in general terms). See also Lease v. Doll, 403 A.2d 558, 562 (Pa. 1979) (finding language in an easement ambiguous where it did not specify the use contemplated by the parties of a path along a river - pedestrian or vehicular traffic); Amerikohl Mining Co. v. Peoples Nat. Gas Co., 860 A.2d 547, 550 (Pa. Super. Ct. 2004) (finding the term "a right to mine" in an easement agreement was ambiguous because it was not clear what method of mining was allowed - strip mining or surface mining).

[30]   Adv. D.I 127 at 13.

[31]   Id. at Ex. 1 (EUU, Recitals D & E, §§ 1.1, 2.1).

completely integrated, inseparable and interdependent so as to make the operation of one impossible without the operation of the other."[32]  They rely on the Zoning Code to argue that the Unity of Use combined the parcels so that all were in compliance with the Code's requirement for sufficient off-street parking for the size of the buildings.[33]  They contend that the EUU complies with the Code by designating Parcels D and E for accessory parking and signage.[34]  They note that the REA acknowledges the EUU was an agreement of the parties to treat the parcels as one unit for zoning purposes and to use, occupy and maintain each lot in compliance with the EUU.[35]  These are essentially the same arguments the Plaintiffs made in response to the Defendant's Motion to Dismiss.[36]

In response to the Motion for Judgment on the Pleadings, the Defendant contends that "there is nothing in the REA or EUU mandating use and operating easements for parking or signage for the benefit" of the Plaintiffs on the parcels owned by the

---

[32]  Sams v. Redevelopment Auth., 244 A.2d 779, 781 (Pa. 1968) (holding that in condemnation proceedings, the doctrine of unity of use is not applicable if the properties are owned by two different legal entities).

[33]  Phila., Pa. Zoning Code § 14-802 (Motor Vehicle Parking Ratios).  See also id. at §§ 14-801(1)(a), 14-801(3).

[34]  Id. at § 14-203(2).

[35]  Adv. D.I. 127, Ex. 2 (REA §§ 1(ii), 1(o), 5(e)).

[36]  Adv. D.I. 21 at 10-18, 23-25.

Defendant.[37] It argues that "it defies logic" that the drafters intended to create express use and operating easements for signage and parking from the Preamble and Section 2.1 of the EUU, but excluded any reference to those easements in section 1.1 of the EUU which is entitled "Easements" and from the carefully drafted REA which detailed the easements and agreements regarding them among the parties.[38] It also argues that the rights created in the EUU were expressly for zoning purposes and described the current use of the parcels for that purpose but did not create an easement requiring that same use in the future. These are also essentially the same arguments that the Defendant made in support of its Motion to Dismiss.[39]

In the Dismissal Opinion, the Court determined (accepting all inferences in favor of the Plaintiffs) that it could not conclude, as the Defendant contended, that the EUU and REA were

---

[37] Adv. D.I. 132 at 22.

[38] Id. at 21.

[39] Adv. D.I. 12 at 12-16, 22-24. The Defendant also argues in response to the instant motion that the owners, when they intended to create a right to use accessary parking and signage, entered into separate agreements for the Broad Street and STC buildings. Adv. D.I. 132 at 13-14, Exs. E, F, G, H. The Plaintiffs respond that extrinsic evidence should not be considered because they contend that the EUU and REA are unambiguous. The Court finds it unnecessary to address the additional evidence, because it concludes that the EUU and REA are ambiguous and will require a full evidentiary hearing to resolve that ambiguity.

10

unambiguous.[40]  Specifically, the Court determined that it could <u>not</u> conclude that (1) the EUU was <u>not</u> unambiguously an unenforceable statement, (2) the EUU was unambiguously <u>not</u> an easement, and (3) the EUU unambiguously limited any easement it created for zoning purposes only.  The Court concluded instead that the language of the EUU and REA plausibly supported the Plaintiffs' claims in the Amended Complaint thereby warranting denial of the Motion to Dismiss.

The Plaintiffs now argue, in support of their Motion for Judgment on the Pleadings, that their entitlement to accessory parking and accessory signage are "spelled out clearly and unambiguously in the EUU (and mandated by the REA and Zoning Permit)."[41]  As noted, the Defendant disagrees, contending that the EUU did not create any easements for parking and signage and was for zoning purposes only.

While the Court concluded, in the Dismissal Opinion, that (accepting all inferences in the Plaintiffs' favor), the Plaintiffs' had presented a reasonable interpretation of the EUU and REA which precluded granting the Defendant's Motion to Dismiss, the Court did <u>not</u> conclude that the Plaintiffs' interpretation of the agreements was the only reasonable one.  The Defendant today (as it did in its Motion to Dismiss) also

---

[40]    Adv. D.I. 36 at 11-22.

[41]    <u>Id.</u> at 18.

presents a reasonable argument that the drafters of those agreements did not intend to grant an easement in the EUU in favor of the Plaintiffs for accessory parking and signage. Because the Court must accept all inferences in favor of the Defendant[42] today, it cannot conclude that the EUU is <u>unambiguously</u> an enforceable easement permitting the Plaintiffs to use Parcels D and E for parking and signage.  Both parties present credible interpretations of the EUU and REA for opposite conclusions.

The Court concludes, as it held in the Dismissal Opinion, that "[a]dditional evidence on the intent of the parties, including how they historically treated those agreements in practice, is necessary before the Court can determine which interpretation of the agreements is correct."[43]

## V.   CONCLUSION

For the foregoing reasons, the Court will deny the Motion for Judgment on the Pleadings filed by the Plaintiffs.

---

[42]   <u>See</u> note 18.

[43]   <u>Zettlemoyer v. Transcon. Gas Pipeline Corp.</u>, 657 A.2d 920, 924 (Pa. 1995) ("our cases tell us that when the grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant").

An appropriate Order is attached.

Dated: February 26, 2024BY THE COURT:

_____
Mary F. Walrath
United States Bankruptcy Judge